UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARIAH DANIELS,<br><br>  Plaintiff,<br><br>  v.<br><br>R. FOX, Warden, et al.,<br><br>  Defendants. | No.  2:15-cv-1264 GEB AC P<br><br><br><br>ORDER |

Plaintiff is a state prisoner at the California Medical Facility (CMF) in Stockton, under the authority of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff proceeds pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983. For the reasons set forth below, the court grants plaintiff's motion to proceed in forma pauperis; denies without prejudice plaintiff's request for appointment of counsel; denies plaintiff's motion for leave to proceed on his First Amended Complaint; and accords plaintiff the option of proceeding on his original complaint or filing a Second Amended Complaint.

I.    In Forma Pauperis Application

Plaintiff has submitted a declaration and prison trust account statement that make the showing required by 28 U.S.C. § 1915(a). Accordingly, plaintiff's request to proceed in forma pauperis, ECF No. 5, will be granted.

////

Plaintiff must nevertheless pay the statutory filing fee of $350.00 for this action. See 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

II.     Screening of Plaintiff's Original and Proposed First Amended Complaints

Plaintiff's initial complaint was filed with the court on June 12, 2015. ECF No. 1. On July 23, 2015, plaintiff filed a motion to file an amended complaint in tandem with a proposed First Amended Complaint (FAC). ECF No. 6.

A.      Legal Standards for Screening Prisoner Civil Rights Complaint

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal,

2

556 U.S. 662, 678 (2009) (quoting Twombly at 555). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Iqbal at 678 (quoting Twombly at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly at 557).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

### B.   Legal Standards for Eighth Amendment Claims

"The Eighth Amendment prohibits cruel and unusual punishment in penal institutions. Whether a specific act constitutes cruel and unusual punishment is measured by 'the evolving standards of decency that mark the progress of a maturing society.'" Wood v. Beauclair, 692 F.3d 1041, 1045-46 (9th Cir. 2012) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). "In evaluating a prisoner's Eighth Amendment claim, courts consider whether 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Wood, 692 F.3d at 1046 (quoting Hudson, 503 U.S. at 8).

"The unnecessary and wanton infliction of pain upon prisoners constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993) (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)). "Under traditional Eighth Amendment analysis, we first consider whether there is an 'infliction of pain,' and, if so, whether that infliction is 'unnecessary and wanton.'" Jordan, 986 F.2d at 1525. However, "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions;' it outlaws cruel and unusual 'punishments.' An act or omission unaccompanied by knowledge of a significant risk of harm

1 . . . cannot under our cases be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. 825, 837-38 (1970) (citations omitted).

Therefore, only "[a] prison official's 'deliberate indifference' to a substantial risk of harm to an inmate violates the Eighth Amendment." Farmer, 511 U.S. at 828 (citations omitted). The Eighth Amendment prohibits prison officials from using excessive force against prisoners. Id. at 832 (citation omitted). "The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Id. at 832-33 (citations and internal quotation marks omitted).

To state a claim of deliberate indifference to a prisoner, the plaintiff must plausibly allege that the deprivation of his rights was "objectively, sufficiently serious," and that the prison official had "a sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (citations and internal quotation marks omitted). A prison official will be liable on a failure to protect claim only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

            C.       Plaintiff's Proposed FAC and Motion for Leave to Amend

As a general rule, leave to amend a pleading should be "freely given when justice so requires." See Fed. R. Civ. P. 15(a)(2). However, plaintiff's proposed FAC fails to state a cognizable claim for relief against any defendant because it fails to identify the challenged conduct of any defendant. Although plaintiff has carefully organized and articulated several legal theories, he has not linked these theories to the specific conduct of any defendant.

"A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978); see also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988) ("The inquiry into causation must be individualized

4

and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). There can be no liability under Section 1983 unless there is some affirmative link or connection between a specific defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 371 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980).

A complaint that fails to identify the specific action or inaction of a defendant that allegedly violated plaintiff's federal constitutional or statutory rights fails to meet the notice requirements of Rule 8(a), Federal Rules of Civil Procedure. See Hutchinson v. United States, 677 F.2d 1322, 1328 n.5 (9th Cir. 1982). For this reason, plaintiff's motion for leave to file his proposed FAC, ECF No. 6, will be denied without prejudice. Therefore, the court now screens plaintiff's original complaint pursuant to 28 U.S.C. § 1915A.

          D.        Screening of Plaintiff's Original Complaint

Plaintiff's original complaint, ECF No. 1, contains adequate charging allegations but lacks some coherence.[1] Plaintiff will be accorded the opportunity to proceed on his original complaint, on the claims identified below, or to file a Second Amended Complaint (SAC) in an effort to better articulate his allegations and claims.

In his original complaint, plaintiff alleges that on July 24, 2014, correctional officer Ballenger discovered a kite (handwritten inmate note) that indicated someone wanted to kill plaintiff. Despite this information, Ballenger did not inform plaintiff and allowed him freedom of regular movement for approximately 90 minutes, putting plaintiff's life in danger. Ballenger thereafter informed plaintiff of the kite, but told plaintiff that he was not permitted to discuss it with other prison officials. Plaintiff alleges that Ballenger may have "dropped the kite" on him ("set him up"). Plaintiff confronted Ballenger and told him that he was going to file a staff complaint against him for failure to adhere to protocol when dealing with threats against an inmate, and for placing plaintiff's life in danger.

---

[1] For example, the assertions in the complaint that the continuing violation doctrine should apply, and that the Office of the California Attorney General is procedurally barred from representing any defendant, are without merit.

The next week plaintiff was attacked by another inmate (Evans) using a "lock in a sock." Plaintiff filed a grievance alleging prison officials had failed to protect him. Allegedly in response to the grievance, correctional officer Mendoza retaliated by removing plaintiff from his assigned job as a porter, and issuing a bed move removing plaintiff from his housing unit. Plaintiff alleges that he was traumatized by Mendoza's reaction, resulting in plaintiff's placement on Crisis Bed Watch in the Mental Health Crisis Treatment Unit. After approximately one week, plaintiff was released back into the general population in his former housing unit, where he felt vulnerable to further attack. Plaintiff alleges that, "[a]s a direct result of these arbitrary and capricious actions, plaintiff now suffers greatly from acute depression, bouts of severe mental anguish, hyper-awareness, hyper-arousal, night terrors, bouts of sleeplessness and an overall anxiety level." ECF No. 1 at 7-8.[2]

Approximately ten days later, correctional officer Smith obtained plaintiff's placement in administrative segregation (Ad Seg), "making (false) claims & allegations of threats of force and violence were being made against plaintiff (by unknown inmates?)." ECF No. 1 at 7. Plaintiff alleges that he was initially placed in an "illegal sized 'Cage' holding pen," where he was denied water, sustenance and restroom availability for several hours. Finally, in response to plaintiff's shouts, an unidentified correctional sergeant removed plaintiff from the holding cage. Plaintiff was housed in segregated housing for about six months, during which he filed grievances and staff complaints against Smith, "for falsifying state documentation, giving false testimony, unnecessary use of force & deliberate & intentionally placing plaintiff in physical danger (possibly for his life)." Id. at 7-8. Plaintiff avers that this appeal was granted at the Warden's level of review.

Meanwhile, a CDC-115 Rules Violation Report (RVR) was adjudicated against plaintiff, and he was found guilty. When called to testify, Smith reportedly stated that he could not remember anything, although the Office of Internal Affairs and state Ombudsman's office had

///

---

[2] Page references are to the pagination that results when documents are filed within the court's Case Management/Electronic Case File (CM/ECF) system.

been "contacted." Officer Maszck "was the first to respond to these incidents (from the start)." Id. at 8.

It appears from plaintiff's exhibits to his original complaint that he exhausted at least three related administrative grievances: (1) against Correctional Officer Ballenger, for failure to protect plaintiff on July 24, 2014, and instilling fear in plaintiff by letting plaintiff go to chow after discovering an anonymous note indicating that plaintiff would be stabbed if he wasn't moved to another housing unit; later locking plaintiff in the dayroom alone; then informing plaintiff of the note but forbidding plaintiff to discuss it with other staff (Log No. CMF-14-01816),[3] see ECF No. 1 at 16 et seq.; (2) against unnamed "CMF N-2 Housing Officers and responding staff," for failure to protect plaintiff on August 9, 2014, when plaintiff was attacked by inmate Evans (Log No. CMF-14-01906), see ECF No. 1 at 28 et seq. (this appeal was investigated by CMF's Institutional Security Unit, and CDCR's Office of Internal Affairs );[4] and (3) against unnamed CMF staff (identified as Correctional Officer Smith in an underlying interview and companion staff complaint, Log No. CMF-14-02170), for cruel and unusual punishment on September 4, 2014, based on the conditions of plaintiff's six-hour confinement in the Ad Seg holding cage, which led plaintiff to seek medical care on September 5, 2014 (Log No. CMF-14-02051), see ECF No. 1 at 82 et seq.[5]

Although plaintiff exhausted his claim that correctional staff failed to protect him from the August 9, 2014 assault by inmate Evans (Log No. CMF-14-01906), see ECF No. 1 at 28 et seq., neither the complaint nor plaintiff's underlying grievance clearly identify a specific officer or officers allegedly responsible. Review of the incident reports attached to the underlying

---

[3] A CMF inquiry into Ballenger's alleged misconduct determined that defendant had violated policy. ECF No. 1 at 16.
[4] Pursuant to this grievance, plaintiff requested the names of staff responsible for permitting inmate Evans to attack plaintiff. ECF No. 1 at 32. This appeal also alleges that plaintiff responded to Correctional Officer Mendoza's question "what did I intend to do about this matter," by saying that "I'm going to pursue civil and criminal charges." Plaintiff avers, "[w]ithin 30 seconds he took my porter job and on the same day had me moved out of building [illegible]." Id. at 35.
[5] The exhibits to plaintiff's complaint also include (1) an exhausted challenge to the handling of plaintiff's mail (Log No. CMF-14-01473), see ECF No. 1 at 93 et seq., and (2) an apparently unexhausted due process challenge to plaintiff's placement in segregated housing (Log No. CMF 14-02118), see ECF No. 1 at 110 et seq.

7

1  grievance indicates that defendant Tabbs was the correctional officer who opened Evans'  cell
2  door.  See, ECF No. 1 at 41 (incident report completed by Tabbs).  Under the Ninth Circuit's
3  ruling in Reyes v. Smith, 810 F.3d 654 (9th Cir. 2016), the failure of a prisoner to name an
4  official in a fully exhausted grievance will not preclude a civil action against that official.  See
5  Reyes, 810 F.3d at 658 ("a prisoner exhausts 'such administrative remedies as are available,'
6  42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule if prison
7  officials ignore the procedural problem and render a decision on the merits of the grievance at
8  each available step of the administrative process").  Tabbs is the only named defendant whose
9  presence during the incident is readily ascertainable.  For this reason, plaintiff will be permitted to
10 pursue an Eighth Amendment failure to protect claim against defendant Tabbs, based on his
11 original complaint.  If plaintiff can identify other officials responsible for the inmate movement
12 and security at the time Evans assaulted plaintiff, then plaintiff may file a SAC that includes this
13 claim against additional named officials.
14     Plaintiff makes no charging allegations against defendant Guido (alleging only that he was
15 unaware of the kite discovered on July 24, 2014, despite being defendant Ballenger's partner, see
16 ECF No. 1 at 7), and makes no allegations whatsoever against defendant Fox (CMF Warden).[6]
17 Regarding defendant Maszck, plaintiff alleges only that he was the first officer to respond to
18 some of plaintiff's administrative grievances, see ECF No. 1 at 9, which does not state a
19 cognizable claim.[7]  Therefore, these defendants will be dismissed if plaintiff proceeds on his
20 original complaint.

---

[6] It is unlikely that plaintiff can state a cognizable claim against CMF Warden Fox based on to the instant allegations, which do not assert that Fox had any personal knowledge or involvement in the events giving rise to plaintiff's claims.  Plaintiff cannot rely on a respondeat superior theory.  "Liability under § 1983 must be based on the personal involvement of the defendant." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998) (citation omitted) ("plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights").

[7] Because there is no due process right to any particular grievance process, plaintiff cannot pursue a claim that Maszck failed to comply with grievance procedures or failed to resolve a particular grievance in a favorable manner.  See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (failure to process prisoner's grievances not actionable under Section 1983); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (prisoners have no stand-alone due process rights related to the administrative grievance process); Ramirez v. Galaza, 334 F.3d 850, 860 (there is no liberty interest entitling prisoners to a specific grievance process).

Accordingly, liberally construing plaintiff's original complaint with reference to the attached exhibits, the court finds that it appears to state potentially cognizable Eighth Amendment claims against defendant correctional officers Ballenger, Smith and Tabbs, as follows: (1) against Ballenger based on his alleged conduct on July 24, 2014, specifically, his failure to timely inform plaintiff of the note threatening plaintiff's safety; allowing plaintiff to walk freely during mealtime without such knowledge; failing to inform other officials of the note or permit plaintiff to do so; and thereafter retaining plaintiff alone in the dayroom (failure to protect, and cruel and unusual punishment); (2) against Smith based on his role in retaining plaintiff in a holding cage for six hours on September 4, 2014 (deliberate indifference to plaintiff's health and safety, and cruel and unusual punishment);[8] and (3) against Tabbs based on his role during inmate Evan's August 9, 2014 assault on plaintiff (failure to protect).

The court also finds that the complaint states a potentially cognizable First Amendment retaliation claim[9] against defendant Mendoza, for removing plaintiff from his porter job and

---

[8] Plaintiff's additional allegations against defendant Smith – that Smith was responsible for plaintiff's placement in Ad Seg and/or for the finding of guilty on plaintiff's RVR, based on false information, see ECF No. 1 at 9 – are not sufficiently developed in the complaint to state a cognizable claim; nor are the exhibits helpful in elucidating these matters.

Plaintiff cannot state a cognizable claim premised on allegations that his placement in administrative segregation was based on allegedly false information. Placement in segregated housing pending investigation of disciplinary charges is within the discretion of prison officials. There is no protected liberty interest in being free of confinement in a secure housing unit because such confinement is "within the range of confinement to be normally expected" by prison inmates. Resnick v. Hayes, 213 F.3d 443, 448-49 (9th Cir. 2000); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (a prisoner has no protected interest in freedom from administrative segregation).

[9] "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (fn. and citations omitted). Direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009), citing Rhodes, 408 F.3d at 568, n11.

Plaintiff need not prove that the alleged retaliatory action, in itself, violated a constitutional right. Rather, the interest asserted in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive. See, e.g., Pratt v. Rowland, 65 F.3d 802, 806 (1995) (to prevail on a retaliation claim, plaintiff need not

9

1 transferring him to another housing unit upon learning that plaintiff had a filed a grievance
2 challenging the failure of prison officials to protect plaintiff from Evans' attack. While it is not
3 clear at this juncture that plaintiff administratively exhausted this claim, the court will permit the
4 further development of this matter.

5 Accordingly, plaintiff may proceed on his original complaint against defendants
6 Ballenger, Smith, Tabbs, and Mendoza. Alternatively, plaintiff may file a proposed Second
7 Amended Complaint in which he refines his claims against these defendants, and attempts to add
8 additional cognizable claims against these and/or other defendants.

### D.  Option to File a Second Amended Complaint (SAC)

If plaintiff chooses to file a SAC, the complaint must allege in specific terms how each named defendant allegedly violated plaintiff's constitutional rights. Rizzo, supra, 423 U.S. at 371. There can be no liability under Section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

An amended complaint supersedes the original complaint and must therefore be complete in itself without reference to the original complaint. See Local Rule 220; Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Therefore, a SAC must identify each claim and the challenged conduct of each defendant.

### III.  Motion for Appointment of Counsel

Plaintiff requests appointment of counsel to assist him in pursuing this action. See ECF No. 7. Plaintiff is recognized by CDCR to have disabilities within the meaning of the Americans with Disabilities Act (ADA), specifically, mobility impairment, mental depression and stress, and

---

"establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir.1997) (upholding jury determination of retaliation based on filing of a false rules violation report); Rizzo, 778 F.2d at 531 (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). Filing administrative grievances and initiating litigation are protected activities, and it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567-68.

his request for appointment of counsel was prepared with the assistance of a Library Technical Assistant.  The request informs the court that plaintiff is prescribed psychotropic medications that impair plaintiff's abilities to read, write and understand (supporting documentation is provided).

The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in Section 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  Nevertheless, in certain "exceptional circumstances" the district court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1). Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990); see also Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989) (district courts do not have authority to require attorneys to represent indigent prisoners in Section 1983 cases).

When determining whether "exceptional circumstances" exist, the court must consider plaintiff's likelihood of success on the merits as well as his ability to articulate his claims pro se in light of the complexity of the legal issues involved.  Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009).  The burden of demonstrating exceptional circumstances is on the plaintiff.  Id. Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances supporting appointment of counsel.  Id.

In the instant case, the court does not find the required exceptional circumstances at the present time.  The court cannot determine, at this juncture, whether there is a reasonable likelihood of success on plaintiff's claims.  Moreover, the existing claims are not particularly complex, and have been well documented throughout the administrative exhaustion process. Finally, despite plaintiff's assertions to the contrary, it appears that plaintiff is fully capable of articulating his claims pro se.  Plaintiff's inmate grievances are cogent and detailed, and demonstrate that plaintiff can adhere to procedural requirements and deadlines.  Although plaintiff's handwritten proposed FAC omits reference to the conduct challenged in this action, the remainder of the FAC is clearly and carefully written and organized.  Plaintiff's indigence and lack of legal expertise are circumstances shared with most prisoners.  Plaintiff's psychological challenges and medication side effects are circumstances shared by many other prisoners.  For

these several reasons, the court finds that plaintiff has failed to demonstrate exceptional circumstances warranting the appointment of counsel at this time. Therefore, plaintiff's request for appointment of counsel will be denied without prejudice.

IV. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's request to proceed in forma pauperis, ECF No. 5, is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's motion for appointment of counsel, ECF No. 7, is denied without prejudice.

4. Plaintiff's motion for leave to file his proposed First Amended Complaint, ECF No. 6, is denied.

5. Plaintiff's original complaint states potentially cognizable claims against defendants Ballenger, Smith, Tabbs and Mendoza. See 28 U.S.C. § 1915A. The complaint does not state a cognizable claims against the other named defendants (Fox, Guido and Maszck). Plaintiff may proceed on his original complaint, as construed herein and subject to the dismissal without prejudice of defendants Fox, Guido and Maszck, OR pursuant to a proposed Second Amended Complaint.

6. Within thirty (30) days after the filing date of this order, plaintiff shall return the attached Notice of Election form indicating whether he intends to proceed on: (1) his original complaint against defendants Ballenger, Smith, Tabbs and Mendoza, OR (2) a proposed Second Amended Complaint.

7. If plaintiff elects to proceed on his original complaint, he shall submit, in tandem with the Notice of Election, the following documents to effect service of process on defendants Ballenger, Smith, Tabbs and Mendoza: one completed summons, four completed USM-285 forms, and five copies of the endorsed original complaint filed June 12, 2015, ECF No. 1. The

court will transmit these materials to the United States Marshal for service of process pursuant to Rule 4, Federal Rules of Civil Procedure. These defendants will be required to respond to plaintiff's allegations within the deadlines set forth in Rule 12(a)(1), Federal Rules of Civil Procedure. Plaintiff's election to proceed on his original complaint is subject to his consent to dismiss without prejudice defendants Fox, Guido and Maszck.

      8. If plaintiff elects to file a Second Amended Complaint, he shall submit the proposed SAC together with the Notice of Election, which will be screened by the court pursuant to 28 U.S.C. § 1915A.

      9. The Clerk of Court is directed to send plaintiff, together with a copy of this order, the following: (1) one blank summons, (2) four USM-285 forms, (3) one copy of the endorsed original complaint filed June 12, 2015, ECF No. 1, and (4) instructions for service of process on defendants Ballenger, Smith, Tabbs and Mendoza,

      10. Should plaintiff fail to timely comply with this order, this action will be dismissed without prejudice.

DATED: March 23, 2016.

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

|    |    |
|----|----|
| 1  |    |
| 2  |    |
| 3  |    |
| 4  |    |
| 5  |    |
| 6  |    |
| 7  |    |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| ZACHARIAH DANIELS,        | No. 2:15-cv-1264 GEB AC P |
|---------------------------|---------------------------|
| Plaintiff,                |                           |
| v.                        | NOTICE OF ELECTION        |
| R. FOX, Warden, et al.,   |                           |
| Defendants.               |                           |

   Plaintiff submits the following documents in compliance with the court's order filed _____, and elects to proceed in this action as follows:

_____Plaintiff elects to proceed on his original complaint against defendants Ballenger, Smith, Tabbs and Mendoza, for whom the following service documents are submitted herewith:

   _____  One completed summons form

   _____  Four completed USM-285 forms

   _____  Five copies of the endorsed original complaint filed June 12, 2015

and

   _____  Plaintiff consents to the dismissal without prejudice of defendants Fox, Guido and Maszck.

**<u>OR</u>**

1  _____   Plaintiff elects to proceed on his proposed Second Amended Complaint (SAC), submitted herewith.

_____   _____
Dated                                                                       Plaintiff