UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARIAH DANIELS,<br><br>    Plaintiff,<br><br>    v.<br><br>R. FOX, Warden, et al.,<br><br>    Defendants. | No. 2:15-cv-1264 GEB AC P<br><br>ORDER and<br><br>FINDINGS AND RECOMMENDATIONS |

I.  INTRODUCTION

Plaintiff is a state prisoner at the California Medical Facility (CMF) who proceeds pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983. Presently pending is this court's screening of plaintiff's Second Amended Complaint (SAC) pursuant to 28 U.S.C. § 1915A, and this court's findings and recommendations concerning plaintiff's requests for extraordinary relief. For the reasons that follow, the undersigned finds service of process of the SAC is appropriate for nine defendants, and recommends that plaintiff's requests for extraordinary relief be denied. In another order filed contemporaneously with this order, this case is scheduled for a settlement conference on May 4, 2017.

////

////

////

II.   SCREENING OF SECOND AMENDED COMPLAINT

A.   Legal Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

A district court must construe a pro se pleading liberally to determine if it states a potentially cognizable claim.  While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Id. at 679.  Rule 8 of the Federal Rules of Civil Procedure "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555 (citation and internal quotation and punctuation marks omitted).

B.   Screening

By order filed March 24, 2016, plaintiff was accorded the option of proceeding on his original complaint or filing a Second Amended Complaint.[1]  See ECF No. 12.  The court found that the original complaint states cognizable claims against **defendants Ballenger, Smith, Tabbs and Mendoza,** but does not state a cognizable claim against defendants Fox, Guido or Maszck.  The court concluded in pertinent part, id. at 9 (fns. omitted):

> [L]iberally construing plaintiff's original complaint with reference

---

[1] The court found that plaintiff's original complaint, but not his First Amended Complaint, stated cognizable claims.

2

> to the attached exhibits, the court finds that it appears to state potentially cognizable Eighth Amendment claims against defendant correctional officers Ballenger, Smith and Tabbs, as follows: (1) **against Ballenger** based on his alleged conduct on July 24, 2014, specifically, his failure to timely inform plaintiff of the note threatening plaintiff's safety; allowing plaintiff to walk freely during mealtime without such knowledge; failing to inform other officials of the note or permit plaintiff to do so; and thereafter retaining plaintiff alone in the dayroom (failure to protect, and cruel and unusual punishment); (2) **against Smith** based on his role in retaining plaintiff in a holding cage for six hours on September 4, 2014 (deliberate indifference to plaintiff's health and safety, and cruel and unusual punishment); and (3) **against Tabbs** based on his role during inmate Evan's August 9, 2014 assault on plaintiff (failure to protect).
>
> The court also finds that the complaint states a potentially cognizable First Amendment retaliation claim **against defendant Mendoza**, for removing plaintiff from his porter job and transferring him to another housing unit upon learning that plaintiff had a filed a grievance challenging the failure of prison officials to protect plaintiff from Evans' attack.

Plaintiff's Second Amended Complaint (SAC) incorporates the pertinent allegations and claims of plaintiff's original complaint. See ECF No. 20. Accordingly, the SAC sufficiently alleges the specified Eighth Amendment claims **against Ballenger, Smith and Tabbs**, and the specified First Amendment retaliation claim **against Mendoza**. The court also finds that the SAC sufficiently alleges a First Amendment retaliation claim **against Smith**, premised on Smith's filing of an allegedly false Rules Violation Report (RVR).

Further, the SAC sufficiently alleges Eighth Amendment failure to protect claims **against newly identified defendants Vaden, Goodson, Carpe, Johns, and Corona.** See ECF No. 20 at 7-14. (These defendants were identified in the court's screening order as "unnamed CMF N-2 Housing Officers and responding staff." See ECF No. 12 at 7.)

However, the court again finds that plaintiff has not stated a cognizable claim against CMF Warden Robert Fox.[2] Despite plaintiff's many allegations that Fox had personal knowledge of the matters giving rise to this action, this knowledge is primarily attributed to Fox based on his mandatory review of plaintiff's related administrative grievances. As plaintiff was previously

---

[2] The SAC does not attempt to resurrect claims against previously named defendants Guido or Maszck.

3

informed, he cannot pursue a claim against any defendant for failing to resolve a particular grievance in a favorable manner.[3] The general allegation that Fox "endorsed the findings with his signature," by signing administrative appeal decisions on Second Level Review, does not alter this conclusion. Plaintiff alleges more specifically that, while housed in Ad Seg, he engaged in personal discussions with Fox at his Classification Committee meetings; that he specifically queried Fox why he remained in Ad Seg despite Fox partially granting plaintiff's relevant appeals challenging the conduct of other correctional officials; that when plaintiff showed Fox his staff complaint against defendant Smith, Fox "seemed shocked . . . [and] stuttered a bit then told [] plaintiff [he] would have to appeal it." ECF No. 20 at 24-5.[4] Plaintiff's assertions that this conduct demonstrates Fox's personal knowledge and endorsement of the challenged conduct of his staff, rendering plaintiff's confinement in Ad Seg "false imprisonment" in violation of the Eighth Amendment, also fail to allege the requisite causal connection between Fox and the *past* conduct challenged in this action. Liability may not be imposed on a supervisor under a theory of respondeat superior. Iqbal, 556 U.S. at 676-77; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). Supervisors may be liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–08 (9th Cir.2011). Therefore, the court finds that plaintiff has again failed to state a cognizable claim against Warden Fox.

Finally, the SAC alleges that defendants engaged in one or more criminal conspiracies to deny plaintiff his constitutional rights, citing 18 U.S.C. §§ 241, 242 and 245. See ECF No. 20 at 28-31. Plaintiff may not rely on these criminal statutes to pursue a civil rights claim, or to invite

---

[3] See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (failure to process prisoner's grievances not actionable under Section 1983); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (prisoners have no stand-alone due process rights related to the administrative grievance process); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (there is no liberty interest entitling prisoners to a specific grievance process). Nor can plaintiff rely on a respondeat superior theory. "Liability under § 1983 must be based on the personal involvement of the defendant." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citation omitted) ("plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights").

[4] Page references to filed documents reflect the court's electronic pagination when docketed pursuant to the court's Case Management/Electronic Case Files (CM/ECF) system, not the original pagination of the filed documents.

the court to refer these matters to the United States Attorney for criminal prosecution.  See <u>Allen v. Gold Country Casino</u>, 464 F.3d 1044, 1048 (9th Cir. 2006) ("18 U.S.C. §§ 241 and 242 . . . are criminal statutes that do not give rise to civil liability") (citing <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980) ("18 U.S.C. §§ 241 and 242 [are] . . . criminal provisions [that] . . . provide no basis for civil liability."); <u>Cooley v. Keisling</u>, 45 F. Supp. 2d 818, 820 (D. Ore. 1999) ("18 U.S.C. § 245 is a criminal statute and does not grant the plaintiff a private right of action.").

For these several reasons, the court finds that **service of process of the SAC is appropriate for defendants Ballenger, Smith, Tabbs, Mendoza, Vaden, Goodson, Carpe, Johns, and Corona.**  Later in this order the court directs plaintiff to provide the information necessary for the United States Marshal to serve process on these defendants.  However, defendant Fox will be dismissed from this action without prejudice, as will previously named defendants Guido and Maszck.

### III.     REQUESTS FOR EXTRAORDINARY RELIEF

Plaintiff has filed three motions for extraordinary relief, supported by declarations, and entitled as follows:  (1) "Motion for Order Directing the Deputy Attorney General to Order the Defendants to Cease and Desist in Subjecting Plaintiff to Retaliation for Filing this Litigation," ECF No. 23; (2) "Motion for Order Directing the Defendants to Cease and Desist in Harassing Plaintiff as a Result of this Lawsuit," ECF No. 25; and (3) "Petition for Order of Injunction on Defendants to Stop Retaliation," ECF No. 26.  The court construes each of these matters as a motion for temporary restraining order, and recommends that each motion be denied.

#### A.     Legal Standards

Under Rule 65, Federal Rules of Civil Procedure, "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party" only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1).  Obtaining ex parte relief under Rule 65 is limited to situations where notice to the adverse party would likely prove useless.  See <u>Reno Air Racing Ass'n v. McCord</u>, 452 F.3d 1126, 1130 (9th Cir. 2006) (citing cases).  The legal standards for obtaining a temporary

1 restraining order are essentially identical to those for obtaining a preliminary injunction. See
2 Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc., 181 F. Supp. 2d 1111, 1126 (E.D.
3 Cal. 2001); Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323
4 (N.D. Cal. 1995).

"The sole purpose of a preliminary injunction is to 'preserve the status quo ante litem pending a determination of the action on the merits.'" Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009) (quoting L.A. Memorial Coliseum Comm'n v. NFL, 634 F.2d 1197, 1200 (9th Cir.1980)). In evaluating the merits of a motion for preliminary injunctive relief, the court considers whether the movant has shown that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); accord Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009). "At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm. Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must . . . demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988) (citations omitted). A preliminary injunction is appropriate when a plaintiff demonstrates . . . "serious questions going to the merits and a hardship balance [] tips sharply toward the plaintiff, . . . assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011).

An injunction against individuals who are not parties to the action is strongly disfavored. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110 (1969). Additionally, in cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

////

B.     Plaintiff's Motions

The factual allegations in support of each motion, and the requested relief, significantly overlap and are therefore addressed together for purposes of analysis.

Plaintiff contends that defendants, including Warden Fox, are retaliating against plaintiff for pursuing the instant litigation. In his declaration filed June 21, 2016,[5] plaintiff avers that he has been housed in CMF's Unit N-3/Cell N-319 in the Enhanced Outpatient Program (EOP) which provides mental health care to prisoners. On June 13, 2016, Sergeant Swan informed plaintiff that he was moving out of EOP, despite a June 12, 2016 recommendation by plaintiff's Interdisciplinary Treatment Team (IDTT) that plaintiff remain in the EOP for an additional 90 days. Plaintiff felt suicidal in response to Sergeant Swan's news and was placed in a crisis bed, where the attending psychologist recommended that plaintiff remain in the EOP. ECF No. 23 at 2. On June 15, 2016, Sergeant Bowman told plaintiff that Warden Fox ordered plaintiff's removal from the EOP and placement on the "mainline." "The Chief Psychologist and Supervising Psychologist Dr. Johnson told Sgt. Bowman that [plaintiff] was protected under Coleman, which [required that] my mental health overrode my custody placement," and plaintiff was placed back in his cell. Id. at 3. The next day, Sergeant Lesane told plaintiff that he was moving to Ad Seg, but Wing Officer Perez told the Sergeant that plaintiff was cleared to stay in the EOP program. Id. Plaintiff asserts these actions demonstrate "that Warden Robert Fox is retaliating against me for filing this action" and, moreover, that "[t]hroughout all of this, my property was packed twice and I had to unpack." Id. The only action requested by this filing was contained in the title: that the court direct the Deputy Attorney General (DAG) to order defendants to "cease and desist in subjecting plaintiff to retaliation for filing this litigation." Id. at 1.

////

---

[5] Unless otherwise noted, petitioner's filing dates referenced herein are based on the prison mailbox rule, pursuant to which a document is deemed served or filed on the date a prisoner signs the document (or signs the proof of service, if later) and gives it to prison officials for mailing. See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by prisoners).

7

In his declaration filed July 8, 2016, plaintiff avers that he was "moved to Cell M-206-L as a form inconvenience [sic], discrimination, harassment and retaliation as a result of filing this law suit." ECF No. 25 at 1. Plaintiff explains that Sergeant Swan told plaintiff on July 7, 2016 that he was being moved to M-Wing. "Sgt. Swan refused to tell me the reason why, but he told me if I refused I was going to Ad Seg. I later found out that the move was ordered by Captain Brown." Id. at 2. Plaintiff attempted to tell Sergeant Swan that he had a "bad history in M-Wing with the regular officers that worked in that unit." Id.; see also id. at 2-3, ¶¶ 3-5. Nevertheless, plaintiff was moved back to M-Wing and subjected to regular contact with one of the correctional officers (Morrison) who had previously issued an allegedly false RVR against plaintiff. Id. at 3, ¶ 6. By this filing, plaintiff seeks "to be moved back to N-319-L with no more retaliatory tactics." Id. at ¶ 7.

In his "petition" filed August 11, 2016, plaintiff recounts the events noted in his prior motions. See ECF No. 26 at 1-5. Plaintiff then states that the day he moved to "M-2" was Correctional Officer Morrison's day off. The next day, when she returned to work, Morrison allegedly "went into a rage screaming, what are you doing in here! How did you get into my building? Don't you get comfortable one bit, because your getting of here! [Plaintiff] calmly said, I never wanted to be in here anyway." Id. at 6 (sic). The next day, plaintiff was moved to "L-3." Within thirty minutes, plaintiff was informed by a sergeant that correctional staff had received an anonymous note stating that plaintiff had "made explicit threats to the physical safety of three correctional officers." Id. Plaintiff was then placed in Ad Seg. The next day, Captain Brown told plaintiff that "over the last month and a half, they received so many kites mentioning" plaintiff. Id. A thirty-day investigation into plaintiff's alleged threats "was concluded with negative results for the threat allegation[.]" Id. However, plaintiff was in possession of a phone "to call NAACP and other agencies because of the continuing harassment he was receiving from staff," which was confiscated pursuant to a search by the Investigative Service Unit (ISU) team. Id. Plaintiff avers that he is still in Ad Seg waiting to be interviewed by the ISU Team. Id. at 7. In this filing, plaintiff seeks the following extraordinary relief: "(1) Order of injunction to stop retaliation; (2) Order to not be moved, and or so with frivolous kites, or anonymous notes (sic);

(3) To be released from this false imprisonment especially since the investigation into this matter has been concluded [concerning plaintiff's alleged threats to correctional staff]; [and] (4) For such other relief as the court deems just and proper." Id.

### C.   Analysis

Each of plaintiff's motions for extraordinary relief addresses matters that occurred after plaintiff filed his SAC, based on the alleged retaliation of numerous correctional officials against plaintiff for commencing and pursing this action. With the exception of Warden Fox, the correctional officials challenged by these motions are not parties to this action. Injunctive relief against individuals not parties to an action is strongly disfavored. Zenith Radio, 395 U.S. at 110. Moreover, plaintiff has generally failed to demonstrate entitlement to injunctive relief. Although it is possible that plaintiff could prevail on the merits of his underlying claims, preliminary relief is not necessary to preserve the status quo on those claims or the court's ability to fully address them. Plaintiff avers harm due to his current placement in Ad Seg and the other allegedly new acts of retaliation against him. However, plaintiff does not allege harm to the merits of his underlying claims or his ability to pursue them. Moreover, it cannot be said that the requested relief is in the public interest. Finally, the matters plaintiff challenges in his requests for extraordinary relief, e.g., new retaliation claims, may be incorporated into this (or another) action only if plaintiff first exhausts his administrative remedies on those claims.[6] See 42 U.S.C. § 1997e(a); Ross v. Blake, 136 S. Ct. 1850, 1854-55 (June 6, 2016); see also Jones v. Bock, 549 U.S. 199, 211 (2007).

For these reasons, the undersigned recommends that each of plaintiff's motions for extraordinary relief be denied.

### IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Second Amended Complaint (SAC), ECF No. 20, states cognizable claims

---

[6] Plaintiff is informed that a prisoner may, in a further amended complaint, add new claims based on conduct that took place after the action was commenced, if the new claims were administratively exhausted before the filing of the further amended complaint. See Rhodes v. Robinson, 621 F.3d 1002, 1005 (9th Cir. 2010); see also Akhtar v. J. Mesa, 698 F.3d 1202, 1210 (9th Cir. 2012).

under the Eighth and First Amendments as previously identified in this order.

2. **Service of process of the SAC is appropriate for the following nine defendants: Ballenger, Smith, Tabbs, Mendoza, Vaden, Goodson, Carpe, Johns and Corona.**

3. The Clerk of Court is directed to send plaintiff nine (9) USM-285 forms, one summons, one instruction sheet, and one copy of **pages 1 through 34 only** of the 160-page SAC filed April 27, 2016 (ECF No. 20).[7]

4. Within forty-five (45) days after service of this order, plaintiff shall complete the attached Notice of Submission of Documents and submit the following documents to the court:

   a. The completed Notice of Submission of Documents;

   b. One completed summons;

   c. One completed USM-285 form for each defendant listed in Number 2 above (a total of nine (9) completed USM-285 forms); and

   d. Ten (10) copies of the formal portion of plaintiff's endorsed SAC filed April 27, 2016 (pp. 1-34 only).

5. Plaintiff need not attempt service on defendants and need not request waiver of service. Upon receipt of the above-described documents, the court will direct the United States Marshal to serve the above-named defendants pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

6. **Defendants Fox, Guido and Maszck are dismissed from this action without prejudice.**

Further, **IT IS HEREBY RECOMMENDED** that plaintiff's motions for extraordinary relief, ECF Nos. 23, 25, and 26, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings

---

[7] Pages 1 through 34 comprise the formal portion of plaintiff's SAC, *excluding* his exhibits (set forth at pp. 35-160).

and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 28, 2016

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARIAH DANIELS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>R. FOX, Warden, et al.,<br><br>　　　　Defendants. | No.  2:15-cv-1264 GEB AC P<br><br><br>NOTICE OF SUBMISSION OF DOCUMENTS |

　　　　Plaintiff submits the following documents in compliance with the court's order filed
_____:

　　_____　　One (1) completed summons form

　　_____　　Nine (9) completed USM-285 forms

　　_____　　Ten (10) copies of the endorsed SAC (ECF No. 20), pp. 1-34 only

_____　　_____
Date　　　　　　　　　　　　　　　　　　　　　Plaintiff

1